**YEE SING JONG, on Behalf of Yee Dong Tun, v. NAGLE, Commissioner of Immigration.**

No. 6012.

Circuit Court of Appeals, Ninth Circuit.

May 19, 1930.

Eddy Knapp, of San Francisco, for appellant.

George J. Hatfield, U. S. Atty., and Lucas E. Kilkenny, Asst. U. S. Atty., both of San Francisco, for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and NETERER, District Judge.

DIETRICH, Circuit Judge.

By his next friend the appellant, Yee Dong Tun, a Chinese boy now a little over twelve years of age, brought this proceeding in habeas corpus to obtain his release from the custody of the immigration authorities who had denied him admission to the United States and were intending to return him to China. His petition was denied, and hence this appeal.

He seeks admission upon the alleged ground that he is the foreign-born son of Yee Quing Sheck, alias Yee Quong Look, who asserts that he is the son of one Yee Ying Ock, a native-born citizen. The conclusion of the Board of Special Inquiry at San Francisco was that appellant had failed satisfactorily to establish either that he is the son of Yee Quing Sheck or that the latter is a citizen.

The boy arrived at the port of San Francisco in the summer of 1928, and at the first hearing, held on August 10th of that year, he and his alleged father gave testimony. The Board found him to be about the age claimed and to be "quite intelligent" for his years. No fault was found with his demeanor and his testimony disclosed that he was familiar with much of the history of his alleged father's family. At times he corrected earlier statements in his testimony but the Board was inclined to attribute these mistakes to his youth rather than a disposition to pervert the truth. The father's testimony was in some particulars at variance with testimony he had given upon prior occasions and these discrepancies he did not satisfactorily explain. In their comment at the time the Board specifically referred to two discrepancies between the testimony of appellant and that which the alleged father then gave which are measurably substantial. But no decision was then reached for the reason, as explained by the Board, that it was awaiting the result of an investigation respecting two letters it had received (one in Chinese and the other English), purporting to have been written by the appellant's alleged paternal grandmother in China, which, if authentic, tended strongly to show that the claim of relationship with the native-born citizen hereinbefore mentioned was fraudulent. Withholding knowledge of their existence from appellant and his alleged father, the Board had referred them to the United States Consul General at Hong Kong, but for reasons we need not stop to explain the effort to have such investigation made was fruitless and the letters remained unauthenticated up to April, 1929, when a second hearing was had at San Fran-

cisco. After appellant had been further interrogated, his attention was called to the letters, some of the statements in which, as already indicated, were highly conflicting with the former testimony of himself and his alleged father. Thereupon he retracted some of his former statements and in its final form his testimony was out of harmony both with the letters and the testimony he had given at the first hearing in highly material particulars. Indeed, assuming the "fairness" of the proceedings at this second hearing, the conflicts thus developed are of such character that the reasonableness of the Board's conclusions scarcely admits of discussion. The major contention made on appellant's behalf is that, considering his age, it was grossly unfair for the Board to confront him with these letters, impliedly representing to him that they were from his grandmother when their authenticity had not been established. The reasoning in effect is that because of the peculiar respect, amounting to reverence, which a Chinese child entertains for his parents and grandparents the letters operated to intimidate appellant and induce him to conform his testimony to statements therein made regardless of what he believed to be the truth. It could hardly be suggested that the officers acted in bad faith or themselves did not believe the letters to be authentic; and so far as appears they may be genuine. Nor does the record bear out the assumption of appellant's counsel that he was thus coerced, for as a matter of fact in important particulars his ultimate testimony is in direct conflict with some of the statements in the letters. It is therefore unnecessary to consider what view should be taken if the coercive effect had been such as counsel has assumed in his argument. The Board of Review did not treat the letters as of probative value, and very considerately and conservatively weighed the conflicts brought into the applicant's testimony as a result of their use.

Affirmed.